Judge Rosemary Ledet
h This is a commercial lease dispute. The parties are BCNO 4, L.L.C. (“BCNO 4”), the lessor, and An Erny Girl, L.L.C. *835 (“Erny Girl”), the lessee. From the trial court’s judgment denying Erny Girl’s dec-linatory exception of lis pendens and granting the BCNO 4’s petition for possession (eviction action),[1] Erny Girl appeals.[2] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 23, 2013, the parties entered into a commercial lease agreement (the “Lease”). The leased premises were located at 619 Frenchman Street in New Orleans, Louisiana; Erny Girl leased the premises to operate the Frenchmen Art Market there.
On January 28, 2016, Erny Girl filed a Petition for Damages, Declaratory Judgment and Permanent Injunction (the “Declaratory Action”), captioned “An Erny Girl, L.L.C. v. BCNO 4 L.L.C. and John Gregory Fox,” which was allotted to ^Division “C” of the Orleans Parish Civil District Court (“CDC”). In its Declaratory Action, Erny Girl requested, among other things, a declaration that “the Lease is effective and continuing through June 9, 2016, and that the defendant, BCNO [4], is obligated and ordered to cease any and all attempts to improperly terminate the lease and undermine Lessee’s peaceful possession.”
In the Declaratory Action, Erny Girl alleged the following regarding the term of the Lease:
• The Lease had an initial term of February 1, 2013 through January 31, 2014 (Section 2 of the Lease);
• Sometime after January 31, 2014, Erny Girl began discussing a renewal option with BCNO 4; and around June 1, 2014, BCNO 4 and Erny Girl renewed the Lease for an additional year, through June 1, 2015.
• Around February 25, 2015, BCNO 4 began to discuss and negotiate with Erny Girl an additional renewal of the Lease for a third term.
• On June 9, 2015, BCNO 4 and Erny Girl agreed to a renewal option on the Lease, extending the Lease through June 9, 2016.
On the same day it filed the Declaratory Action (January 28, 2016), Erny Girl, by letter, attempted to exercise the renewal option under the Lease and thereby extend the term of the Lease to June 9,2017. The letter stated that Erny Girl was “electing to exercise its renewal option within Section 4 of the Lease, extending the term of the Lease through June 9, 2017.” The renewal clause (Section 4 of the Lease), however, provided that “Tenant shall have the option to renew this lease thirty (30) days before the end of the initial term.” (Emphasis supplied).
lsBy letter dated February 15, 2016, BCNO 4 rejected Erny Girl’s attempted renewal of the Lease, stating:
[Erny Girl’s] attempt to exercise the option to renew is without effect. The lease had an initial term of one year, expiring January 31, 2014 (See Section 2), with an option to renew for an additional one year term expiring January 31, 2015 (See Section 4). Upon expiration of the renewal term on January 31, 2015, the lease converted to month to month term. On January 11, 2016, my client [BCNO 4] sent the lessee written notice *836 of lease termination, effective February 12, 2016.
In its answer to the Declaratory Judgment Action, BCNO 4 asserted that the Lease was validly terminated as of February 12, 2016. BCNO 4 also filed a recon-ventional demand requesting, among other thing, “a declaratory judgment be issued, stating that the Lease expired on February 12, 2016.” Additionally, BCNO 4 gave Erny Girl notice to vacate.
Thereafter, BCNO 4 filed two petitions for possession (eviction actions). Both actions were entitled “BCNO 4, L.L.C. v. An Erny Girlboth actions were filed in the same case number and allotted to CDC Division “J.” The first action, which was filed on April 25, 2016, sought to evict Erny Girl based on its failure to maintain all-risk property insurance as required by the Lease (the “First Eviction Action.”).[3] The second action, which was filed on June 24, 2016, sought to evict Erny Girl based upon its judicial admission in its Declaratory Action that the Lease terminated on June 9, 2016 (the “Second Eviction Action”). Although Erny Girl was served with the Second Eviction Action on July 28, 2016, it failed to file an answer to that action.
|40n July 25, 2016, Erny Girl filed a declinatory exception of lis pendens. On July 29, 2016, Erny Girl filed an unverified answer to the First Eviction Action. The trial court, in Division “J,” set a hearing on the lis pendens exception for August 15, 2016.
In opposing Erny Girl’s lis pendens exception, BCNO 4 suggested that the trial court in Division “ J”—the division in which the eviction actions (the later filed actions) were pending-transfer the eviction actions to Division-“C”—the division in which the Declaratory Action was pending (the earlier filed action). See La. Rules for District Courts, Rule 9.4 (b) (providing that “all subsequent actions asserting the same claim by the same parties ... shall be transferred to the division to which the first case filed was allotted, whether or not the first case is still pending.”). Adopting the suggestion, the trial court in Division “J” transferred the eviction actions to Division “C” on August 1, 2016.
On August 15, 2016, a hearing was held, in Division “C,” on both BCNO 4’s pending eviction action[4] and Erny Giii’s lis pen-dens exception.[5] On August 17, 2016, the trial court rendered judgment overruling Erny Girls’ lis pendens exception and *837 granting BCNO 4’s Second Eviction Action. In its written reasons for judgment, the trial court stated as follows:
I (¡After hearing argument, this Court overruled An Erny Girl, L.L.C.’s Exceptions of Lis Pendens filed in response and opposition to BCNO 4, L.L.C.’s two Petitions for Possession of Premises, finding that lis pendens, La. C.C.P. Art. 531, is inapplicable in this matter. An Erny Girl’s “Petition for Damages, Declaratory Judgment, And Permanent Injunction” seeks a declaration from the Court that the lease is effective through June 9, 2016. BCNO 4, L.L.C.’s second “Petition for Possession of Premises”, filed June 24, 2016, seeks possession of the premises based on the expiration of the lease on June 9, 2016, which An Erny Girl, L.L.C. judicially admitted in their Petition. The Declaratory Judgment action does not assert any right to possession past June 9, 2016.[6] From this judgment, Erny Girl filed a suspensive appeal.
MOTION TO DISMISS
Before addressing the merits of the appeal, we must first address BCNO 4’s motion to dismiss. In its motion to dismiss, BCNO 4 does not argue that Erny Girl I ¡¡filed either its petition for appeal or its appeal bond untimely.[7] Instead, BCNO 4 argues that Erny Girl’s appeal should be dismissed because it failed to comply with the requirements set forth in La. C.C.P. art. 4735 for a suspensive appeal of a judgment of eviction.[8] BCNO 4 argues that *838 Erny Girl’s answer, which was filed on July 29, 2016, was neither made under oath, nor pleaded an affirmative defense entitling Erny Girl to retain possession of the leased premises. Erny Girl counters that BCNO 4’s motion to dismiss fails to acknowledge a stipulation between the parties that was intended to preserve its suspensive appeal rights.
To place Erny Girl’s argument regarding the stipulation in context, we provide a brief review of the procedural history of this case. As noted earlier in this opinion, this case originated as two separately filed actions, which were allotted to two different divisions of CDC. After the eviction actions were transferred to the same division as the Declaratory Action, the trial court in that division held a hearing on BCNO 4’s pending eviction actions and Erny Girl’s lis pendens exception. At that hearing, Erny Girl’s counsel raised an issue regarding service upon Erny Girl of the Second Eviction Action. To resolve the issue, the parties entered into a stipulation, which is reflected by the following colloquy:
THE COURT:
17Okay. Good morning again. Counsel. Have we worked out the issue on service? Correct? Both matters have been served. And I understand you-all are going to stipulate that the answer that you filed will be applied to both actions; is that correct?
MS. McMANNEN [COUNSEL FOR BCNO 4]:
Yes, Your Honor.
MR.VICKNAIR [COUNSEL FOR ERNY GIRL]:
That is correct, Your Honor.
Erny Girl acknowledges that the above colloquy is the sole evidence in the record of the stipulation. For this reason, Erny Girl submits that the record is incomplete for this court to decide whether the stipulation was sufficient to preserve its right to a suspensive appeal. To resolve this issue, Erny Girl requests a limited remand to the trial court for clarification. Erny Girl points out that the trial court judge “was present for all discussions relative to the service problems and concerns to preserve Erny [GirlJ’s suspensive appeal rights between the parties.”
We decline Erny Girl’s invitation for a limited remand. The issue of whether Erny Girl validly filed a suspensive appeal is a legal, not a factual, issue. Regardless of the parties’ stipulation, the requirement of a verified answer is not subject to waiver. While the parties could stipulate the answer to the First Eviction Action would apply to the Second Eviction Action, the parties could not stipulate that the mandatory statutory requirements for perfecting a suspensive appeal, including a verified answer, would be waived. This court has held that “the provisions of [La. C.C.P.] Article 4735 are clear and unambiguous and provide a mandatory condition for the maintenance of a suspensive appeal from a judgment of eviction that the tenant must have filed an answer setting forth an affirmative 18defense verified personally by the tenant’s affidavit.” McMillan v. Chauvin, 281 So.2d 181, 182 (La. App. 4th Cir. 1973); see also Interstate Realty Mgmt. Co. v. Price, 11-1131, p. 9 (La.App. 4 Cir. 3/7/12), 86 So.3d 798, 803 (holding that because the appellants failed to answer the Rule for *839 Possession under oath and sign it personally, the appellants were not entitled to a suspensive appeal). Given Erny Girl’s failure to file a verified answer to either eviction action, we find Erny Girl failed to preserve its right to a suspensive appeal. See La. C.C.P. art. 4785.
Alternatively, Erny Girl contends that the judgment denying the exception of lis pendens, incorporated into the final judgment, is appealable and subject to a suspensive appeal pursuant to La. G.C.P. art. 2121. We disagree. A judgment denying an exception of lis pendens is an interlocutory judgment. National Glass & Glazing, Inc. v. Grimaldi Constr,, Inc., 96-121, p. 13 (La.App. 5 Cir. 7/30/96), 680 So.2d 56, 63. Although the correctness of an interlocutory judgment that is incorporated into a final judgment may be considered on appeal,[9] an interlocutory judgment cannot, on its own, provide a basis for a suspensive appeal. Since we find the eviction portion of the judgment—the only final judgment—failed to satisfy the requirements for a suspensive appeal, the denial of the exception of lis pendens—the interlocutory portion of the judgment— cannot satisfy the requirements for a sus-pensive appeal.
|9Thus, the dismissal of the suspensive appeal relating to the eviction action renders ineffective any suspensive relief with respect to the portion of the trial court’s interlocutory ruling denying the declinato-ry exception of Us pendens. The entirety of Erny Girl’s appeal can be maintained only as a devolutive appeal. For these reasons, we grant the motion to dismiss suspensive appeal, but maintain the appeal as devolu-tive.
DISCUSSION
On appeal, Erny Girl’s sole assignment of error is that the trial court erred in denying its declinatory exception of lis pendens.[10] A trial court’s ruling on a Us pendens exception, pursuant to La. C.C.P. art. 531, presents a question of law; thus, it is reviewed de novo. Parker v. Tulane-Loyola Fed. Credit Union, 15-1362, p. 5 (La.App. 4 Cir. 5/25/16), 193 So.3d 441, 444-45 (citing Glass v. Alton Ochsner Med. Found., 02-0412, p. 3 (La. App. 4 Cir. 11/6/02), 832 So.2d 403, 405; and Krecek v. Dick, 13-0804, pp. 3-4 (La. App. 4 Cir. 2/19/14), 136 So.3d 261, 264); see also 727 Toulouse, L.L.G. v. Bistro at the Maison De Ville, L.L.C., 12-1014, p. 7 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1157. On issues of law, the appellate court’s standard of review is simply whether the trial court’s interpretive decision is legally correct. Glass, 02-412 at p. 3, 832 So.2d at 405; First Bank and Trust v. Simmons, 14-1210, 14-1211, p. 24 (La.App. 4 Cir. 4/22/15), 165 So.3d 1025, 1040.
luA declinatory exception of lis pendens is “[t]he procedure to prevent dual trial of duplicate suits in Louisiana courts.” 22 Catherine Palo, LA. CIV. L. TREATISE, SUMMARY JUDGMENT & RELATED TERMINATION MOTIONS § 2:36 (2016). This type of Us pendens exception *840 is governed by La. C.C.P. art. 531, which provides as follows:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
The doctrines of res judicata and lis pendens are closely related. This relationship is reflected in the fact that when the Louisiana Legislature substantially revised the res judicata statute in 1990, it contemporaneously amended the lis pendens article to conform to those changes.[11] See Comments to La. C.C.P. art. 531 (noting that this article was amended in 1990 “to conform to the changes made in the defense of res judicata by La. Rev. Stat. Ann, §§ 13:4231, 4232.”).
Since the 1990 amendment: to La. C.C.P. art. 531, “the requireinents for establishing Us pendens conform to the requirements of res judicata, and the test for lis pendens is whether a final judgment in the first suit would be res judicata in the subsequently filed suit.” Citizens Sav. Bank v. G & C Development, L.L.C., 12-1034, pp. 6-7 (La.App, 1 Cir. 2/15/13), 113 So.3d 1085, 1089; see also Aisola v. Louisiana Citizens Prop. Ins. Corp., 14-1708, p. 4 (La. 10/14/15), 180 So.3d 266, 269 (quoting United Gen. Title Ins. Co. v. Casey Title, Ltd., 01-600, p. 8 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1065, and citing Domingue v. ABC Corp., 96-1224 (La.App. 4 Cir. 6/26/96), 682 So.2d 246, 248) (holding that “[t]he ‘test’ established to determine if an exception of lis pendens should be sustained is the same as that for res judicata-, thus, an exception of Us pendens should be sustained if a final judgment in the first suit would be res judicata in the subsequently filed suit.’”). As this court has noted, [ejven before the 1990 amendment, this was referred to as a “fair test” for determining Us pendens.” First Bank and Trust, 14-1210, 14-1211 at p. 25, 165 So.3d at 1040—41 (citing 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.5 (1999)).
The jurisprudence has identified the following three requirements for Us pendens to apply:
1. There must be two or more suits pending;
2. The suits must involve the same transaction or occurrence; and
3. The suits must involve the same parties in the same capacities.
Aisola, 14-1708 at p. 4, 180 So.3d at 269. All three requirements must be met. Id.
Here, the first and third requirements are not disputed—the pendency of two or more suits and the identity of the parties. There are two or more suits concurrently pending—the Second Eviction Action and the Declaratory Actions. The suits are between the same parties in their same capacities—lessor and lessee.[12] The second *841 requirement—the same “transaction or occurrence”—requires further analysis.
hi/The phrase “transaction or occurrence” was first inserted into La. C.C.P. art. 531 by the 1990 amendment to that article, which substituted the phrase “transaction or occurrence” for “cause of action.”[13] Addressing this change, a commentator notes:
The purpose of the change in language was to broaden the scope of the lis pendens doctrine. The phrase “transaction or occurrence” has a much broader meaning than the phrase “cause,of action.” Generally, a “transaction or occurrence” consists of two or more connected acts and/or agreements. A “cause of action,” on the other hand, involves a single theory of recovery or remedy.
1 Steven R. Plotkin and Mary Beth Akin, LA. PRAC. CIV. PROC., Article 531 (2016 ed.).[14]
As this court has noted, “[n]o one test exists for determining what constitutes the same «transaction or occurrence.” Parker, 15-1362 at p. 7, 193 So.3d at 445 (citing Travcal Properties, LLC v. Logan, 10-323, p. 5 (La.App. 3 Cir. 10/6/10), 49 So.3d 466, 470); see Hy-Oc-tane Investments, Ltd. v. G & B Oil Products, 97-28, p. 6 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057, 1060) (addressing extensively the meaning of the phrase “transaction or occurrence”). Ultimately, however, “[w]hat | ^constitutes a transaction or occurrence must be determined on a case-by-case basis.” Parker, 15-1362 at p. 7, 193 So.3d at 446-47 (citing Krecek, 13-0804 at p. 4,136 So.3d at 264).
On appeal, Erny Girl contends that the transaction or occurrence element is met because the two suits are both based on the validity and enforceability of the Lease. According to Erny Girl, its Declaratory Action seeks a determination that the Lease is effective based on the renewal option in Section 4. Similarly, Erny Girl contends that BCNO 4’s latter filed eviction action arises out of BCNO 4’s contrary position that the renewal option was not effective; hence, the Lease was no longer in effect between the parties. Furthermore, Erny Girl contends that if it is successful in obtaining relief in its Declaratory Action (the first-filed suit), BCNO 4 would be. barred by res judicata from evicting Erny Girl because the Lease would still be in effect between the parties.
If, as Erny Girl contends, both the Declaratory Action and the Second Eviction Action are based on an interpretation of the renewal provision of the Lease, the *842 second requirement for granting lis pen-dens would be met. See Revel v. Charamie, 05-0976, pp. 4-5 (La.App. 4 Cir. 2/15/06), 926 So.2d 582, 584-85 (holding that “both actions clearly arise out of the same occurrence, i.e., Ms. Cheramie’s occupation of the property located at 140 Lonnie’s Lane in Venice, Louisiana.”); Spallino v. Monarch Sign Co., 00-447, p. 5 (La.App. 3 Cir. 10/11/00), 771 So.2d 784, 786 (noting that “[a]t the center of both suits instituted by Mr. Spallino is the question of whether or not the lease agreement has been breached.”). Such is not the case here.
The Second Eviction Action, as BCNO 4 contends, is not based on the effectiveness of Erny Girl’s purported renewal of the Lease. Rather, it is based on | i4Erny Girl’s judicial admission in its Declaratory Action that the Lease terminated on June 9, 2016. As BCNO 4 points out, “[t]he thing demanded in the Declaratory Action (a declaration that the Lease was effective until June 9, 2016) is therefore clearly different than the thing demanded in the Second Eviction Action (eviction of Erny Girl based on its admission that the Lease terminated on June 9, 2016).”[15] The Second Eviction Action seeks to adjudicate Erny Girl’s entitlement to possession of the leased premises after June 9, 2016; whereas, the Declaratory Action, on the other hand, seeks to adjudicate Erny Girl s entitlement to possession of the leased premises until June 9, 2016. Thus, there is no overlap in the operative period of time addressed by those two actions. Given the judicial admission, the two actions present two wholly distinct issues.
Erny Girl also contends that the trial court erred by improperly applying pre-1990 amendment lis pendens jurisprudence to deny its exception on the basis that the first-filed suit (the Declaratory Action) is an ordinary proceeding while the second-filed suit (the Second Eviction Suit) is a summary proceeding. In support of this contention, Erny Girl cites Spallino, supra, as involving “the exact facts” as here and as dictating a finding that lis pendens applies here.
Erny Girl’s reliance upon the Spallino case is misplaced. The sole similarity between Spallino and this case, as BCNO 4 points out, is that both involved a lease dispute that was the subject of both an ordinary and a summary proceeding.[16] 11fiUnlike this case, the Spallino case involved the two actions that presented the same issues regarding whether a lease was breached by a sign on the leased property.[17] In Spallino, the parties in both suits were arguing over their obligations under *843 the same lease, for the same property, involving the same sign. According to the Court in Spallino, a final judgment in one suit would have a res judicata impact on a judgment in the other suit. For those reasons, the exception of lis pendens was sustained in Spallino.
In this case, the exception of lis pendens was overruled not because of the difference in the form of the two actions, but because of the difference in the transaction or occurrence at issue. As discussed earlier in this opinion, the Declaratory Action seeks possession of the leased premises until June 9, 2016; whereas, the Second Eviction Action seeks possession of the leased premises after June 9, 2016. Thus, the issues presented in the two actions are separate and distinct. Again, the distinction arises from Erny Girl’s judicial admission.
Relying, in part, on a similar distinction arising from a stipulation,[18] this court in Sauer v. Johnson, 12-0197 (La.App. 4 Cir. 12/13/12), 106 So.3d 724, affirmed a trial court’s decision overruling a lis pendens exception. In Sauer, we found the two pending suits presented separate and distinct issues based, in part, on 11Ba stipulation that the lease had a month-to-month term.[19] In Sauer, the tenant filed a discrimination suit against her landlord, asserting refusal to renew the month-to-month lease and subsequent attempts at eviction were violations of anti-discrimination provisions of the Fair Housing Act, 42 U.S.C. § 3604. Thereafter, the landlord filed an eviction action. In response, the tenant filed a lis pendens exception. The tenant argued that the eviction action should be dismissed because it arose out of the same transaction or occurrence—the landlord’s decision not to renew the tenant’s month-to-month lease. The trial court overruled the Us pendens exception and granted the landlord’s eviction action.
Affirming, this court in Sauer reasoned that “even if [the tenant] Ms. Johnson were to receive judgment in her favor on the issue of discrimination, [the landlord] Ms. Sauer would still be able to evict [the tenant] Ms. Johnson without giving any reason because of the fact that the lease is on a month-to-month basis.” 12-0197, p. 7, 106 So.3d at 728. Given the stipulation that the lease was on a month-to-month basis, we thus found no error in the trial court’s denial of the lis pendens exception given that a final judgment in the first filed discrimination case would not be res judi-cata in the later filed eviction proceeding. Id.
In this case, as in Sauer, a final judgment in the Declaratory Action would not be res judicata in the later filed Second Eviction Action. Again, the two pending actions do not arise out of the same transaction or occurrence. Given the judicial admission, the two actions involve claims to entitlement of possession to the lease premises for separate and distinct operative periods—before and after |17June 9, 2016. The second requirement necessary for granting Us pendens has not been met. See Krecek, 13-0804 at pp. 6-6, 136 So.3d at 265 (finding that second element was not met given the two actions “involve separate and distinct occurrences, and a judgment in either suit would not constitute res judicata in the other.”). We thus *844 find no error in the trial court’s ruling overruling the lis pendens exception.

Frivolous appeal damages

In both its motion to dismiss and its appellee brief, BCNO 4 requests frivolous appeal damages. See La. C.C.P. art. 2164. The proper procedure for an appellee to request frivolous appeal damages is to file either an answer to the appeal or a cross-appeal. Roger A. Stetter, LA. PRAC. CIV. APP. § 11:18 (2016) (“Stettter”) (citing La. C.C.P. art. 2133 and Galle v. Orleans Parish School Bd., 623 So.2d 692 (La. App. 4th Cir. 1993)). “Damages for taking a frivolous appeal cannot be recovered if they are claimed only in a motion to dismiss.” Stetter, § 11:19. Likewise, “[a]n appellee cannot recover damages for taking a frivolous appeal if the damages are first requested in the appel-lee’s brief.” Stettter, § 11:19. “An appel-lee’s brief does not constitute an answer or appeal for purposes of requesting frivolous appeal damages.” Stettter, § 11:19. (citing Sears, Roebuck & Co, v. Appel, 698 So.2d 682 (La. App. 4th Cir. 1992)).
In sum, neither a motion to dismiss nor an appellee brief is a proper procedural method for asserting a frivolous appeal damage claim. Since these were the only two methods in which BCNO 4 asserted a frivolous appeal damage claim, we decline to address it. See Armstrong Airport Concessions v. K-Squared Rest., LLC, 15-0376, pp. 18-19 (La.App. 4 Cir. 10/28/16), 178 So.3d 1094, 1106; Kirby v. Poydras Ctr., LLC, 15-0027, 15-391, p. 13 (La. App. 4 Cir. 9/23/15), 176 So.3d |18 601, 608; Carroll v. Department of Police, 06-0726, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 674, 677; Eckhardt v. Reveley, 04-0288, pp. 4-5 (La.App. 4 Cir. 7/21/04), 881 So.2d 128, 131. Accordingly, BCNO 4’s request for frivolous appeal damages is denied.
DECREE
For the foregoing reasons, the motion to dismiss the suspensive appeal is granted; however, the appeal is maintained as de-volutive. The judgment of the trial court is affirmed.
MOTION TO DISMISS APPEAL GRANTED, SUSPENSIVE APPEAL DISMISSED, AND APPEAL MAINTAINED AS DEVOLUTIVE; AFFIRMED

. Although the lessor filed two eviction actions, the trial court's reasons for judgment reflect that it granted the lessor’s second one. We thus refer to a single eviction action, meaning the second one.

. As discussed elsewhere in this opinion, we grant BCNO 4’s motion to dismiss, dismiss Erny Girl's suspensive appeal, and maintain the appeal as devolutive.

. The hearing on the First Eviction Action was originally set for July 12, 2016; however, it was continued to August 1, 2016. On that date, as noted elsewhere in this opinion, the eviction actions were transferred to the division in which the Declaratory Action was pending.

. At the commencement of the hearing, BCNO 4’s counsel stated that “our eviction proceeding is not based on insurance coverage [First Eviction Action]. It’s based on the judicial admissions that are in the petition in the underlying suit [Second Eviction Action]. So we don’t intend to address the insurance coverage issue at all this morning,”

. As discussed elsewhere in this opinion, Erny Girl raised an issue at the hearing regarding service, which was resolved by a stipulation. In its brief to this court, Erny Girl asserts that "[it] had not been served with the Second Eviction Action set for August 15, 2016 with the new rule date. BCNO [4] requested that Erny [Girl] waive service for it. Erny [Girl] consented, but under the belief that the hearing would proceed only based upon the insurance theory raised in the First Eviction Action and was not aware that the Second Eviction Action was proceeding to hearing on that date.” Erny Girl further asserts that its counsel "specifically communicated to [the trial judge and counsel for BCNO 4] that he would move forward on the eviction that day and waive service if appellant’s suspensive appeal rights were preserved.”

.Addressing the Second Eviction Action, the trial court further stated in its reasons for the judgment the following:
The Court heard testimony from Brittany Thompson on behalf of BCNO 4, L.L.C. and from Katherine Gaar on behalf of An Erny Girl, L.L.C. and received documents into evidence.
Section 2 of the lease executed between the parties provides an initial lease term expiring on January 31, 2014. Section 4 of the lease allows the tenant an option to renew the lease 30 days before the end of the initial term. Correspondence from counsel for BCNO [4] to counsel for An Erny Girl, dated February 15, 2016, advises that "upon expiration of the renewal term on January 31, 2015, the lease converted to month to month term.”
There is no evidence that any further options to renew either existed or were [sic] timely exercised by An Erny Girl, and therefore after January 31, 2015, the lease converted to a month to month lease. The Court finds that An Erny Girl’s untimely attempt to exercise a renewal option, extending the term of the lease through June 9, 2017, is without effect. Other than the vague and uncertain testimony of Mr. Gaar relative to a conversation with Mr. Fox of BCNO [4], there is no evidence that the lease ever extended beyond January 31, 2015.
On January 28, 2016, An Erny Girl, L.L.C. filed a Petition for Damages, Declaratory Judgment and Permanent Injunction ■judicially admitting and seeking a declaration by the Court that the lease terminates on June 9, 2016. Without admitting that the lease terminated on June 9, 2016, BCNO [4] accepted the judicial admission of An Erny Girl, sent a notice to vacate, and now seeks possession of the premises based on the June 9, 2016 termination.
The Court finds that BCNO 4, L.L.C. is entitled to possession of the premises located at 618 Frenchmen Street, New Orleans, Louisiana, and judgment of eviction shall be rendered accordingly.

. On August 18, 2016, Erny Girl filed a petition for suspensive appeal from the trial court’s August 17, 2016 judgment. On the same date, the trial court granted the petition for appeal and ordered that Erny Girl post a $10,000 suspensive appeal bond. Erny Girl posted the bond, and the appeal was lodged with this court.

. La. C.C.P. art. 4735, which provides as follows:
An appeal does not suspend execution of a judgment of eviction unless the defendant has answered the rule under oath, pleading an affirmative defense entitling him to re *838 tain possession of the premises, and the appeal has been applied for and the appeal bond filed within twenty-four hours after the rendition of the judgment of eviction. The amount of the suspensive appeal bond shall be determined by the court in an amount sufficient to protect the appellee against all such damage as he may sustain as a result of the appeal.

. See Phillips v. Gibbs, 10-0175, p. 4 (La.App. 4 Cir. 5/21/10), 39 So.3d 795, 798 (citing People of Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (1968)) (noting that the correctness of an interlocutory ruling can be considered in conjunction with the appeal of a final judgment).

. Erny Girl frames the issue as whether “[t]he trial court erred in its Judgment of August 17, 2016, in denying plaintiff-appellant An Erny Girl's Declinatory Exception of Lis Pendens based on the plaintiff-appellant’s previously filed Petition for Damages, Declaratory Judgment, And Permanent Injunction in Orleans Parish Civil District Court, which concerns the same transaction or occurrence, and is between the same parties in the same capacities.” '

. See Brown v. A.J. Barcia’s Heating & Air Conditioning, Inc., 94-2539, p. 4, n. 2 (La. App. 4 Cir. 6/29/95), 657 So.2d 762, 764 (noting that ”1990 La. Acts No. 521 (effective January 1, 1991) amended La. R.S. ,13:4231 (res judicata) as well as La. C.C.P, art, 531 (lis pendens) to reflect similar changes.”).

. The fact there is an additional defendant in the Declaratory Action does not dictate a different result. See First Bank and Trust, 14-1210, 14-1211 at p. 29, n. 40, 165 So.3d at 1043 (noting that ”[t]he failure to name Mr. Canizaro in the second suit does not defeat the exception of lis pendens as to the common parties to both suits.”).

. Before the 1990 amendment, La. C.C.P. art. 531 read as follows: ‘‘[w]hen [i] two or more suits are pending in a Louisiana court or courts [ii] on the same cause of action, [iii] between the same parties in the same capacities, and [iv] having the same object, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925," The 1990 amendment removed not only the same cause of action requirement, but also the same object requirement. See' United Gen. Title Ins. Co. v. Casey Title, Ltd., 01-600, pp. 8-9 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1066 (noting that “the 1990 amendment of the article removed the 'same object' requirement, simply requiring that the suits arise out of the same transaction or occurrence. The fact that different types of relief are requested does not always exclude consideration of the exception of lis pendens when those suits involve the same issues” and citing Spallino v. Monarch Sign Co., 00-447, p. 8 La.App. 3 Cir. 10/11/00, 771 So.2d 784, 788).

. See also Comments to La. R.S. § 13:4231 (noting that "[t]he central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.”).

. Indeed, as noted elsewhere, BCNO 4 maintains its position that the Lease terminated on an earlier date, February 12, 2016.

. In Spallino, the appellate court rejected the landlord’s argument that a lis pendens exception was not applicable to a summary eviction proceeding filed after an ordinary suit. The appellate court noted that "[t]he critical point expressed in [the landlord's] argument is that the two types of suits are not subject to a claim of lis pendens because they have different objects, in that one suit seeks to obtain ownership and the other seeks an eviction.” Spallino, 00-447 at p. 7, 771 So.2d at 788. Rejecting this argument, the appellate court noted that the requirement of identity of the objects of suits was expressly repealed by the 1990 amendment to the lis pendens article. Id. The appellate court thus held that "the fact that different types of relief are requested does not always exclude consideration of the exception of lis pendens when those suits involve the same issues.” Spallino, 00-447 at p. 8, 771 So.2d at 788.

.The issues were "whether the sign interferes with the construction of the proposed jewelry store and, if so, then to interpret the terms of the lease agreement and determine whether Monarch is obligated to remove the sign or merely relocate the sign on another part of the properly.” Spallino, 00-447 at p. 5, 771 So.2d at 786.

. See Irsch v. Argonaut Great Cent. Ins. Co., 02-988, p. 11 (La.App. 5 Cir. 1/28/03), 841 So.2d 831, 838 (noting that "[a] stipulation has the effect of a judicial admission or confession”).

. We noted that "[t]he parties stipulated that the initial term of the lease between them expired on March 31, 2011, and after that date, the lease provided for an automatic renewal on a month-to-month basis only." Sauer, 12-0197, p. 7, 106 So.3d at 728.